He's all rise, here he, here he, this Honorable Appellate Court for the Second Judicial District is now back in session. Appellate Joseph E. Burkett, presiding. Please be seated. Your Honor, the first case on the job is 1-2-19-0250. WCVB Corporation, the Federal Corporation for the Defense of the County. The ability to deal with the law is of no use to the corporation. The defendant, Tony, is not here on behalf of the Federal Corporation for the Defense of the County. Mr. Adam R. Fultz is not here on behalf of the defendant. Tony is the first to pass the statute. Yes, Your Honor. Good morning. May it please the Court. The issue in this case is whether a non-home rule unit in a government has the power to ban billboards under the Illinois Highway Advertising Control Act. The court below found that the act does permit a prohibition by a non-home rule unit, which was the first time, at least based on recorded appellate history, that any court has found that. I want to first discuss four main cases that discuss the interpretive of the Highway Act and the regulations that are permitted, and then the intent of the act itself. With respect to your position on these issues, though, did you not argue below that you were making a facial constitutional challenge or a facial challenge to the amended ordinance? Your Honor, that was language used. I think perhaps it may have confused the issues, because what we had argued all along was that the Highway Control Act did not give the authority to the non-home rule units of government to outright prohibit billboards. Under Dillon's rule, if a non-home rule unit lacks authority in the Constitution or specifically with a statute, then the non-home rule unit lacks any ability to enact such a law. In fact, the case we cited, Elmhurst, stated that even when you're looking into a statute, into an ordinance, and determining whether or not there's authority permitted by statute, the court actually interprets the statute to be invalid if there's a question. Where in a facial challenge to the statute or even an ordinance under a constitutional claim, whether it's a First Amendment, for example, the court then looks at that to decide. It presumes the constitutionality of the statute or ordinance. And in such a situation, it then looks to see is there any interpretation of the statute that would allow it to survive constitutional scrutiny, and if so, then it would be held valid. Right. But that's a heightened pleading standard, which actually the court here used. Isn't that correct? Well, the judge, the court discussed that, but I think in the end, the judge sidestepped that a bit by stating that the Act permits the non-home rule unit, the government, to outright prohibit the billboards, and so you didn't have to actually reach the issue of whether or not there was any place in the area in question where a billboard at 80 square feet by 10 feet high would be reasonable. Thank you for clarifying that. You do not argue that T&S signs was wrongly decided? No, Your Honor. We do not. So, I mean, basically, you accept that a non-home rule unit of government can have more restrictive ordinances than Section 6? Yes. Both T&S signs and also the Dingman case in the Fourth District found that, and that was due to an interpretation of trying to balance all the provisions within the Act. So Section 1 gives the basic purpose of the Act, and that is to promote beautification of the highways as well as permit commercial use of property, including the use of billboard signs. And the Act was enacted out of a response to the Highway Beautification Act in the 1960s, which was actually called the Lady Bird Act because Lady Bird Johnson, driving, I guess, through Texas, saw that there were billboards all over and thought that it crowded the highway and made the highways less beautiful. So Congress enacted the Highway Beautification Act asking the states to regulate billboard advertising, and if they did not, it would receive a 10% reduction for federal highway funds. So Illinois enacted the Highway Control Act, but it has a dual purpose. One, the beautification concerns with the Highway Act, but also recognizing the interest of property owners and to develop the property and to use it to make billboards. So then Section 6 sets forth the requirements that the state statute alone is going to regulate what the size, the height, the lighting regulations would be. Section 7, then, which is interpreted by T&S signs, says that if the municipality or the county decides to regulate, then so long as it is within the intent of the Act and customary use, then Section 6 doesn't apply. Your argument is that the signage or billboards permitted by the ordinance are not consistent with the intent of the Act and customary use. That's correct, Your Honor, because the issue here is there is, as we say in our brief, there's a slope. So if you can regulate more strictly than the Act, but you're a non-homeowner and you can't prohibit, at some point that regulation becomes so restrictive it has to become a prohibition. And that's where this case, we think, should be returned, because it's a 615 issue at this point. We have alleged that the ordinance prohibits billboards outright, but that's going to be a question of fact based on the location of the land, the terrain, the speed of the highway that you can travel past, the distance from where the sign would be put. And in our complaint, we attached exhibits with letters from people who explained that if you're going 70 miles an hour and you're looking at a sign that's 1,500 feet off the road, you need three to five seconds to read it, so you have to have a certain square footage in order to read the sign. In the cases that have interpreted this, it never got into that specific nuance of it. If, for instance, it's... Well, don't... Basically, we've just said that customary use is the maximum. It has been interpreted that customary use is the maximum, which is Section 6, correct? I don't know if that was the controlling part of T.S. Sines, but I certainly recognize that the Court said that. That was in Whiteco, I think. Oh, okay. Right. But this particular issue of at what point does that restriction become a prohibition is what this case is about. And we've alleged that because of where this place is on the highway, there's no way that anybody would ever put up a billboard that's 10 feet high and 80 square feet because... Well, you rely on Dolson and say that Dolson, I think, controls the outcome here or should control the outcome here, but we rejected that reasoning. I mean, Dolson found the ordinance invalid but relied on Section 1. National Advertising, in National Advertising, which was a Second District case from 1988, saw a conflict between Sections 1 and 7, said it should be resolved, but resolved it on the side of saying the municipality may more strictly regulate signs. So how can you be relying on Dolson if we've got National Advertising? Well, in Dolson there was a specific prohibition, just outright. You can't have billboards. And that's where the Third District said the Act doesn't permit that because the Act clearly allows for signage, and so there's nothing in the Act that says that a non-homeroom unit can prohibit it. In T.S. Signs, the issue was the ordinance allowed signs, but the plaintiff argued that the non-homeroom unit couldn't go below Section 6. And so what the question was is can a non-homeroom entity go more strict than Section 6, and the court found it could. But an issue in that case was the plaintiff wanted a specific size sign which was larger than the sign that the ordinance allowed. And so when the court said they were allowed to make it more restrictive, the court then said we don't need to get to the issue of whether or not a total ban would be proper because that was a secondary argument that was made. But the sentence is because the sign you want isn't permitted by that ordinance, we don't need to reach there. So the court in T.S. Sign never got to this particular issue of at what point does that regulation become a prohibition. And I would argue to the court that that specific question does become very fact-based because nowhere along Interstate Highway is identical. You need to look specifically at whether or not you're both giving the non-homeroom unit government the ability to regulate the environment but at the same time allow for the commercial use both for the property owner and any business like W.C. Media, which we've entered into at least a rectable court. But aren't you really asking this court to determine what signage would be commercially desirable rather than whether the village has the right to regulate with the approach you're suggesting? No. What we're suggesting is the court should find that an outright prohibition is not permitted by law. Then send it back and let it through discovery and facts that are presented. The trial court should determine whether or not the specific sign that they're trying that the regulation has in that location fits within the balance between the intent of the act both on beautification and on the ability to unrecognize. We don't have an outright prohibition. So this is, I mean, the Gilbert's ordinance did allow signage, so it's not an outright prohibition. That's correct. But that gets into that our argument is at some point if you can regulate more strictly but you can't prohibit, a line gets crossed. We're saying the line's been crossed. They're saying it's not. But that becomes a factual question that is appropriate for the trial court to determine. And that's why on a 615 motion to dismiss we suggest that it should be sent back with the clarification under law that the act does not allow a home rule unit to prohibit, but the trial court can then make the determination based on that statement of all where, in fact, the prohibition lies specific to this area. Have you seen any cases that discuss when restrictions become de facto bans? I looked on the acts and we did not find anyone that really reached those P&F signs. It was sort of buried in there, as I said, that they didn't get to the question. Isn't that an argument that really should be made before the village board of trustees? I mean, it's really you're asking the court to interfere with the zoning regulation authority that traditionally we defer to the municipalities, and you have your opportunity to address that across the hearing and make your case to the village. I mean, has that been attempted? There's been very slight discussions with the village, but it didn't seem like we were going to come to an agreement. I think that would be my impression is that your first step, although you're certainly not prohibited by law, but these are steps that should be taken before the village board first. I understand. That makes sense, certainly, if nothing else. And maybe from a judicial economy perspective, I mean, as I said, it's not on the record, but there have been discussions. It didn't seem like they would be fruitful. But to the specific question of whether we should be at the board, the question is what authority does the board have? And whether or not the board has a good reason for enacting the ordinance that they did, if the act doesn't give them the authority to do that, then the good intentions don't really matter. I mean, I would note that initially when WC Media filed its first complaint, there was an ordinance that specifically prohibited it. We moved, you know, we filed this action. Judge Aikman denied their motion to dismiss, certified one question, and then this ordinance was enacted in response. Was your billboard refused by the city? I mean, did you ever seek a permit from the city? There was an initial request, and it was, I think, the response was, well, I can't remember the specific language, you know, file and see what happens. Is there an administrative remedy that's issued here? No. Exhausting that? No, I do not think so, because the specific question is the authority of the village to enact an ordinance that prohibits billboards under the act. I believe it's a straight powers of a non-vulnerable unit entity of government. Because, again, as I was stating to Justice Burkett, that even if their intent is good, if they don't have the authority, the ordinance doesn't stand. But maybe their authority in certain instances would, you know, this kind of – I can see where the trial judge got to this facial challenge issue, because maybe there are places along the highway in the town where a 10-foot high, 10 by 8 billboard would be visible. At your locations, you've got people saying they're not visible, because I understand what the complaint says. I mean, that's where we get to this facial issue, which I can see how the trial court may have gotten, you know, detoured into. I mean, is it possible that there are areas along the roadway in the village where a sign of that size would be viewable? I don't know specifically. We attached pictures. I have not actually driven by there. So for me to say yes or no wouldn't – I know as much about the location as the record has. So I would state that we very clearly stated – I know my client has said there's no way that the locations where they have the leases at, that would work. It just wouldn't even be visible from the road, much less if you could read it and you could see it. But if there are such places, then this ordinance would be fine? I would think for that location. Because you can't – again, that goes to the powers of the home rule. If you can – just because it may work in one place and it doesn't work in the other place, the valid ordinance in one place doesn't allow them to enact an invalid ordinance elsewhere. There are permitting processes in most municipalities permitting variances, presiding variances. So, I mean, the ordinance is not – even if it was a de facto ban, the permitting process allows you to have a deviation. That's true. That's absolutely right. And I do believe those are Gilbert's ordinance. I think they have a model ordinance that does permit to that. Again, outside of the record, I didn't think that avenue was going to be fruitful. So that's where we proceed. Again, looking at it, it's clearly not an outright ban. Your argument is it's a de facto ban for purposes of the locations that have been identified by your client, right? That's essentially your argument. Well, the argument is it's an outright ban in that it's a – Go ahead. Yes. The intent is to prohibit a ban by making a regulation that is so stringent that nobody is going to ever be able to use it. Specifically in our locations, yes, it's just absolutely impractical. And as a ban by letter, does it permit a billboard, an 80-square foot by 10-foot tall billboard? Yes. But then again, that's where this argument that at some point we've slipped into a prohibition comes, and that's a fact-based question rather than a legal-based question. Thank you. No time for rebuttal. Thank you. Mr. Aspruth. Am I pronouncing your name correctly? Yes, that's correct. Good morning, Your Honor. May it please the Court. Kurt Aspruth on behalf of the Village of Gilberts. As much as Plaintiff wants to make this case about the ability of the village to ban billboards, that's simply not an issue. A signed ordinance plainly on its face permits billboards to be erected. This Court has already addressed this issue in T&S Signs that held that a non-home municipality like Gilberts can enact provisions regulating billboards that are more stripped than those in Section 6 of the Highway Act. Do you agree, though, that a ban by a non-home municipality would be preempted by the statute? Again, we don't think a ban is at issue here. However, Dolson seems to have been rejected by this Court and other courts on numerous occasions. Dolson is the only Illinois case holding that a non-home municipality can ban billboards. Under the plain language of the Act, the ability of municipalities to regulate billboards is plain. We can't regulate billboards as long as it's consistent with customary use. Customary use under T&S Signs and WICO means that as long as the signs don't go above the standards in Section 6, then it's a valid regulation. There's no minimum size regulations in the Highway Act, and nowhere in the Highway Act did the legislature say that a municipality cannot ban billboards. The only language in the Highway Act. So, are you arguing that you can ban? We are not. We are arguing that the sign ordinance is a permissible regulation under the holding of T&S Signs. Let me ask you this, though. What if the city enacted an ordinance that said that any highway signs must be one inch by one inch and only one inch off the ground? Not a ban, but that's okay? Under the Highway Act, the legislature said that municipalities can enact stricter regulations than those in Section 6. That's pretty strict. So the legislature put in maximum standards. If they wanted to include minimum standards about where a billboard became so much of an effective ban, they would have included that in the Highway Act. If there is any minimum size requirements, that's a question for the legislature. Plaintiffs asking you to legislate where that line is, that is a question that has to be decided by the legislature. They included a maximum limitation in Section 6 that municipalities cannot go above. They did not include any minimum limitation. But the customary use of highway signs and the purpose of the act is both for beautification as well as to foster commercialization and advertisement for those property owners who want to use their property for that purpose, correct? Correct. However, as the Dignity Court has held and has been reaffirmed in TNS signs and in WICO, Section 7 controls over Section 1. And customary use in Section 7 has been interpreted by TNS signs and WICO to mean customary use is nothing above the standards in Section 6. And as the TNS signs adopts a WICO holding, WICO court says, therefore the only billboard regulation that would be inconsistent with customary use is one that allows billboards above Section 6. So any regulation that allows billboards below the standards in Section 6 is consistent with customary use. That's what the signed ordinance does. Nobody's ever really addressed this issue that I've seen. There is no court that has held that a de facto ban violates the signed ordinance or that there is a certain line where a billboard regulation becomes an effective ban. No court has held that. Because, frankly, the Highway Act is clear. Municipalities can regulate billboards as long as it doesn't go above the standards in Section 6. The signed ordinance does not go above the standards in Section 6. It regulates the size, spacing, and height of billboards. Well, the Act doesn't really say that. The courts interpreting the Act have said that. The Act says customary use. And customary use under Section 1, part of that customary use is to allow these things for commercial purposes. And I would suggest a one-by-one billboard, a postage stamp, one inch off the ground wouldn't be really customary use of a billboard. Again, the signed ordinance allows an 80-square-foot fine. It's a sign that's 10 feet off the ground. So we don't think that a postage stamp is really at issue here. However, I don't think that where that line is about when it becomes an effective ban is a question that the court is here to decide. That's a question for the legislature. The Highway Act doesn't contain any minimum standards. Well, but wouldn't that be, I mean, if at some point the economic, doesn't this implicate the economic interests of advertisers? And if these regulations are so severe that it becomes economically unfeasible, that would be a prohibition. And, I mean, would that be a question of fact that shouldn't be decided really by the legislature but actually should go back to the trial court? We don't believe so, Your Honor. Again, Section 7 controls over Section 1. Section 1 contains the recitations from the legislature that billboards should be allowed and it's a valid commercial business. Section 7 controls over that. So Section 7 is really what's at issue here. In Section 7, it's consistent with customary use. Customary use, according to the case law of this court, is nothing above those sections. The purpose of the Highway Act was to receive Federal funds under the Beautification Act, not to protect commercial advertising rights. To receive those funds, they had to enact outer limits on outdoor advertising. It was to try and restrict outdoor advertising. It wasn't enacted to try and protect commercial advertisers. So we believe that under Section 7, customary use clearly is nothing above the standards in Section 6. The sign ordinance on its face, and again, this is a facial challenge, does not prohibit billboards. It allows them subject to certain size limitations under T&S. This is the same case as T&S. Well, originally the village had an outright ban, correct? Correct. This ordinance was in response to this particular litigation, correct? It was enacted while the litigation was ongoing, yes. You didn't raise any issue of exhausting administrative remedies. That was actually raised in their original, when they filed their original complaint. We did raise an exhaustion argument because it appeared that they were seeking remedies as to their specific leased sites. And if they're doing that, then they have to either apply for a text amendment or a variance and pursue the remedies under the zoning ordinance. They obviously had not done that. In response to that argument at the lower court, they said we don't need to exhaust our remedies because we are bringing a facial challenge to the sign ordinance. They're saying that it's invalid in all circumstances. So they certainly have the ability still to apply for a text amendment or a variance. They haven't even applied for permits yet from the village, so they haven't even gotten to that stage. But that exhaustion requirement was raised, and they said that they were bringing a facial challenge, which is why the exhaustion requirement did not apply. Well, did you understand? You didn't understand the facial challenge to be a constitutional challenge, though. You agreed with the opposing counsel's explanation to the court? I don't believe that we – yes, we accepted that it was a facial challenge, under a facial challenge. But that based on a particular section of the Constitution. Not necessarily, no. They were claiming that it's really not what's constitutional. It's a constitutional provision or a statutory provision. It's are they trying to invalidate it as to every single piece of property in the village where it could be applied, and that in all of those circumstances it's invalid. That's what they're alleging. If they were alleging that it was only invalid as to their specific properties, which they still contain some allegations that they do because they reference a berm on their property and they have photographs of their specific properties. If they were challenging the application as to their specific properties, then they would have to exhaust the revenue system. You do agree, though, that the heightened pleading standard isn't employed here? Because that relates to a constitutional facial challenge. Here we're talking about, as opposed to a facial challenge, let's just say a global preemption argument, correct? No, we believe the facial challenge applies here. We believe that same pleading standard applies. They are trying to invalidate the signed ordinance altogether. They are saying that it can't be validly applied as to any single property within the village. Right, based upon a statutory preemption argument. We think that ultimately is a constitutional question, as they raise. They say that a non-home re-municipality under Article 7, Section 7 of the Illinois Constitution doesn't have the authority to enact a signed ordinance ban and that our municipality's ordinance exceeded our constitutional authority. Again, it's really the nature of the challenge. Are they challenging the signed ordinance as applied to their specific properties or are they challenging it altogether? That's the facial challenge. They've admitted on numerous occasions in the lower courts that they were bringing a facial challenge. So we don't think, A, we think that this is a constitutional challenge and, B, even still, it's really the nature of the challenge they're bringing, not the source of that challenge. They're trying to invalidate it altogether. So we think that heightened pleading standard does apply. We think the trial court correctly applied that heightened pleading standard to find that they hadn't satisfied this burden to say that the signed ordinance is invalid in every circumstance, that there is no location in the village where a conforming sign could be seen. Thank you. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. I just first, regarding initially with the administrative remedies, my memory is what was actually the issue was there was a 90-day statute of limitations. That is in the municipal code. We argued that they argued that because we didn't challenge the ordinance within 90 days, meaning the outright ban orders for 90 days of enactment, it was valid. Our argument was that didn't really apply because this was a general ordinance and that particular statute seemed to be dealing more with variances. Like if your neighbor got a variance and they didn't challenge it within 90 days, then you didn't have the chance to challenge it. But general ordinances could always be challenged. And that's where Judge Aikman's certified questions that he came up with that dealt with whether or not an ordinance that was void ab initio could be challenged under that 90-day statute. And whenever they amended the ordinance, that particular argument went away because now we're dealing with a new ordinance, so they weren't bringing a 90-day ordinance anymore. So it wasn't an administrative remedies issue. It was a statute of limitations under the municipal code. And I'll admit I didn't study that part. It's hard coming today, so if anything's wrong, it is correct in the record. I want to just end with discussing the Highway Act and whether or not it's clear. And I would point the court to the Skadron case. And why that matters is because that seemingly doesn't have too much to do with this case because that's a home rule case. But the question, it was a certified question from the Seventh Circuit to the Illinois Supreme Court asking whether or not the Highway Act preempted home rule. And the Supreme Court said that the Highway Act did not preempt home rule because it did not specifically state that it was preempting and therefore the village of Des Plaines could outright prohibit billboards under its ban. If the Act permitted outright bans, the Seventh Circuit and Illinois Supreme Court wouldn't have had to have questioned a home rule preemption issue because if the Act itself allows any municipality, which it refers to any municipality, if it allowed any municipality to prohibit, then there's no need to get to the question of home rule. So even though the Supreme Court did not address that the Act specifically does not allow prohibition and therefore you have to have home rule authority to do it, it's really embedded in that decision because neither the Seventh Circuit or the Illinois Supreme Court need to reach whether or not home rule was preempted or not with the Act if the Act itself allowed for prohibition on its, I guess I'll use the word, face, if the court doesn't have any questions. Well, I mean, let me just ask, I asked the opposing counsel about this facial challenge. I mean, his argument was that you are actually making a facial constitutional challenge under the Illinois Constitution, under the home rule provisions of the Constitution. So as such, the heightened pleading standard would apply. Well, to that point, under the Illinois Constitution, the non-home rule unit only has the powers given to it by the Constitution, which are not implicated here, or by statute. And if they do not have the authority specifically granted under statute, they cannot enact the ordinance. And our argument is that the Highway Act does not permit them to prohibit billboards. And so the way it's interpreted, whereas it's a facial constitutional challenge to the statute, it's presumed the statute is constitutional, whereas if you're looking at whether or not the home rule unit, the non-home rule unit has the power, if there's a question, it's presumed that it does not because the courts have interpreted non-home rule powers very narrowly. And that's the difference between home rule and non-home rule, is that home rules essentially have legislative powers unless it's preempted by the legislature. So to get into whether it's a facial challenge or not, I understand. I certainly understand the point is maybe the language isn't as precise as I'd like to use it. It's just that if they don't have the power, we're not going to presume that it's constitutional because in another place, that ordinance may not be a prohibition. If it's a prohibition in that location, it's a prohibition because the Village of Gilberts didn't have the power to enact it there. So we've argued that anywhere is invalid because we would argue anywhere that is a billboard that's under customary use and under the intent of the Act. But if it's only, if the court were to find a location that isn't ours, that that particular size is okay, it wouldn't have any relevance in whether or not it is permitted in our locations. If the court has no questions, thank you. We would ask that the court be recourse. Thank you. The court thanks both parties for your arguments today. The case will be taken under advisement. A written decision will be issued to the court. Thank you.